```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW HAMPSHIRE
```

Daniel Jarvis, Jr.

    v.                                              Civil No. 16-cv-494-JL
                                                     Opinion No. 2018 DNH 014

Nancy A. Berryhill, Acting
Commissioner, Social Security
Administration


**ORDER ON APPEAL**


Daniel Jarvis, Jr., has appealed the Social Security Administration's ("SSA") denial of his application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at the SSA ruled that, despite several severe impairments, Jarvis retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council later denied Jarvis's request for review, see id. §§ 404.967, 416.1467, with the result that the ALJ's decision became the final decision on his application, see id. §§ 404.981, 416.1481. Jarvis then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Jarvis has moved to reverse the ALJ's decision. See LR 9.1(b). The Acting Commissioner of the SSA has cross-moved

for an order affirming the decision. See LR 9.1(e). After careful consideration, the court denies Jarvis's motion and grants the Acting Commissioner's motion.

I. **Background**[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Jarvis's request for disability and disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920. After determining that Jarvis had not engaged in substantial gainful activity after the alleged onset of his disability on April 4, 2013, the ALJ analyzed the severity of his impairments. At this second step, the ALJ concluded that Jarvis had the following severe impairments: "acquired nerve palsy of left brachial plexus, history of left shoulder injury status post surgical repair, left shoulder osteoarthritis, and status post left carpal tunnel release."[2]

At the third step, the ALJ found that Jarvis's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security

---

[1] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 12) is incorporated by reference. See LR 9.1(d).

[2] Admin. R. at 15.

regulations.[3]  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  After reviewing the medical evidence of record, Jarvis's own statements, the opinions of the State agency medical consultant, Dr. Rosenthal, and the "conclusory opinions" of Jarvis's treating physicians, Drs. Fleit and Buckley,[4] the ALJ concluded that Jarvis, though unable to perform any past relevant work, retained the RFC to perform "less than a full range of light work, as defined in 20 C.F.R. § 404.1567(b)" due to a number of limitations.[5]  Finding that, even limited in this manner, Jarvis was able to perform jobs that exist in significant numbers in the national economy, see 20 C.F.R. §§ 404.1566 and 416.966, the ALJ concluded her analysis and found that Jarvis was not disabled within the meaning of the Social Security Act.[6]

**II.  Analysis**

Jarvis contends that the ALJ erred by:  (1) crafting Jarvis's RFC based on the conclusion that Jarvis was right-handed, (2) discounting the opinions of Jarvis's treating physicians and his treatment records; (3) affording "great

---

[3] Id. at 17.

[4] Admin. R. at 21-22.

[5] Admin. R. at 17.

[6] Admin. R. at 23-24.

3

probative weight" to the opinion of the State agency medical consultant despite the fact that he did not review the entire record; and (4) relying on "insufficient and faulty vocational evidence" at step five of the analysis.[7]  The court addresses each of these arguments in turn and finds no reversible error.

## A. Jarvis's dominant hand

The ALJ, in crafting Jarvis's RFC, concluded that "[h]e would have no effective use of the non-dominant left upper extremity."[8]  In drawing this conclusion, the ALJ observed that "[t]he record generally indicates that [Jarvis's] dominant hand is on the right, despite occasional references to left-side dominance in the upper extremities," and extensively cited where the record so indicates.[9]  As the ALJ acknowledged during the hearing, whether Jarvis was left- or right-handed prior to the

---

[7] Claimant's Mem. (doc. no. 8) at 12.  Jarvis also, in a conclusory manner and without pointing to any specific record evidence that the ALJ failed to consider, contends that the ALJ did not "consider all of the relevant . . . evidence, including all impairments whether severe or non-severe."  Id. at 18-19.  Because Jarvis fails to develop this argument beyond these general assertions, the court deems it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[8] Admin. R. at 17.

[9] Id. at 18.  The ALJ cited 11 separate records indicating that Jarvis was right-handed.

4

onset of his disability "may, in fact, make a fairly big difference in this particular case."[10]

Jarvis contends that the ALJ erred in concluding that his injured left arm and shoulder were "non-dominant" in light of other evidence to the contrary.  He relies on three pieces of evidence in support of this argument:  (1) a single medical record indicating that Jarvis is left-handed[11]; (2) his Disability Report indicating the same[12]; and (3) his own testimony to the effect that he was left-handed before he became disabled, that he injured his left arm <u>because</u> he was left-handed, that the medical records post-dating his disability suggest otherwise because, following that injury, he told his treating providers that he used his right hand because he could no longer, at that point, use his left.[13]  Jarvis contends that the ALJ erred when she "unilaterally chose not to afford any weight" to this evidence.[14]

This court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards

---

[10] Id. at 39.

[11] Claimant's Mot. (doc. no. 8) at 6 (citing Admin. R. at 65, 213-14).

[12] Id. (citing Admin. R. at 213-14).

[13] Id. at 6-8 (citing Admin. R. at 37-38, 46-47, 69-71).

[14] Id. at 6.

5

and found facts upon the proper quantum of evidence." [Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000)](). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," [id.](), that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," [Richardson v. Perales, 402 U.S. 389, 401 (1971)]() (quotations omitted). To the extent that the evidence in this case supports multiple conclusions -- and it very reasonably may -- the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." [Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)]().

Though Jarvis's explanations for the discrepancy between the evidence in his medical records and his testimony are not unreasonable, the evidence in this record is adequate to support the ALJ's conclusion. Jarvis's medical records almost exclusively indicate right-handedness -- indeed, of those that indicated dominance, all but one of Jarvis's medical records indicated that he was right-handed.[15] The ALJ took the one

---

[15] See Admin. R. at 18 (citing at least ten records indicating right-handedness).

6

record to the contrary[16] and Jarvis's disability report[17] into account, as Jarvis's counsel brought both of these documents to the ALJ's attention during the hearing.[18] The court therefore upholds the ALJ's factual findings as to Jarvis's dominant hand.

    **B.    Medical records and opinion evidence**

Jarvis next argues that the ALJ erred in crafting his RFC because she "largely ignored and/or improperly discounted" the records of Jarvis's treating physicians and afforded greater weight to the opinion of a state agency consultant who did not review the entire record.[19] The court likewise finds no error here.

First, Jarvis offers a four-page list of medical records that, he contends, were "largely ignored and/or improperly discounted."[20] However, it appears from the ALJ's decision that she did consider the majority of the records Jarvis cites.[21]

---

[16] Id. at 643.

[17] Id. at 213.

[18] See id. at 46. During the hearing, the ALJ further noted that the same provider also indicated, in other records, that Jarvis was right-handed. Id. at 65-66.

[19] Claimant's Mot. (doc. no. 8) at 8, 12.

[20] See id. at 8-12.

[21] Compare Admin. R. at 18-21 with Claimant's Mot. (doc. no. 8) at 8-12.

7

Merely by way of example, Jarvis contends that the ALJ either ignored or discounted the records of his medical treatment by Deanne Chapman PA on April 9, 2013[22] or his treatment by Dr. Peter Buckley in June 2013.[23] The ALJ specifically discussed these records, among many others, in no small detail in her RFC analysis.[24] Even had the ALJ not specifically cited and explored these records, Jarvis offers no argument or explanation about how they would or should have altered the ALJ's RFC determination,[25] rendering any perceived error harmless. See Perez Torres v. Sec'y of Health & Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989).

Second, Jarvis argues that the ALJ improperly gave "great probative weight" to the opinion of the state agency medical consultant, Louis Rosenthal, M.D., because that opinion was "remote in time to the Decision and without the benefit of the full record."[26] "[I]t 'can indeed be reversible error for an

---

[22] Claimant's Mot. (doc. no. 8) at 8.

[23] Id. at 9.

[24] Admin. R. at 18-19.

[25] See Claimant's Mem. (doc. no. 8) at 12 (arguing only, and without citation, that "[t]he Decision does not provide any rationale which is supported by the record as a whole -- at most, it is arguably supported by conjecture by the ALJ -- as to why the plaintiff's treatment providers are ignored and/or not given proper weight . . . .").

[26] Claimant's Mem. (doc. no. 8) at 12.

8

administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record.'" Brown v. Colvin, 2015 DNH 141, 6-7 (quoting Ferland v. Astrue, 2011 DNH 169, 11 (McAuliffe, J.)). Of course, "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Coppola v. Astrue, 2014 DNH 33, 23–24. An ALJ may yet rely on such an opinion "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Ferland, 2011 DNH 169 at 11 (internal citations omitted).

Jarvis contends that he received new diagnoses and that his "condition worsened" in the period following Dr. Rosenthal's review of his records.[27] He argues, without citation to any legal authority or evidence supporting a lessened functional capacity, that relying on the state agency consultant under these circumstances is "unreasonable, unfair and legally erroneous."[28] Absent any evidence, or even any argument, that

---

[27] Claimant's Mem. (doc. no. 8) at 12-13.

[28] Id. at 13.

9

these new diagnoses or his change in condition established greater limitations than those assessed by Dr. Rosenthal, the court cannot agree.

Nor did the ALJ err in discounting the opinions of Jarvis's treating physicians as to his RFC.[29] Dr. Peter Buckley provided only a summary opinion that Jarvis was "[f]it for work - with restrictions," including avoiding overhead activity and using his injured left hand and arm.[30] Dr. Adam Fleit opined, in similarly summary fashion, that Jarvis was "[n]ot fit for work . . . of any sort at this time," in light of a limited set of restrictions.[31]

The ALJ did not err in discounting these opinions. Opinions on the ultimate issue -- whether or not a claimant is able to work -- are entitled to no deference at all. Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 n.7 (1st Cir. 2007). As to the remainder of Drs. Buckley's and Fleit's opinions -- that Jarvis could not use his left arm -- the ALJ effectively adopted that conclusion, determining that Jarvis "would have no effective use of" that arm.[32]

---

[29] See id. at 13-14.

[30] Admin. R. at 696.

[31] Id. at 928.

[32] Admin. R. at 17.

C.  **Vocational evidence**

At step five of the analysis, the ALJ concluded that Jarvis was not disabled because he retained the RFC to perform jobs that existed in significant numbers in the national economy. The ALJ based this conclusion on testimony from the vocational expert. None of Jarvis's challenges to that conclusion mandate reversal.

First, Jarvis contends that the ALJ erred in relying on the vocational expert's testimony because "[t]here exist obvious inconsistencies" between that testimony and the Dictionary of Occupational Titles ("DOT").[33] "When there is an apparent unresolved conflict between [vocational expert] or [vocational evidence] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational evidence] to support a determination or decision about whether the claimant is disabled." [Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000) ("SSR 00-4P")](). Here, the vocational expert explicitly stated that her testimony was consistent with the DOT.[34] Jarvis

---

[33] Claimant's Mem. (doc. no. [8]()) at 15.

[34] Admin. R. at 63.

has not identified any inconsistencies, obvious or otherwise, that the ALJ should have resolved before relying on that testimony.[35]

Instead, Jarvis contends that the ALJ erred by failing "to establish the existence of sustained <u>full-time</u> jobs," as opposed to part-time jobs, "that were available," or to establish "the time period that said identified jobs were available."[36] He does not argue -- and the record does not reflect -- that the jobs identified by the vocational expert were, in fact, part-time jobs, or were unavailable during the time period invoked by Jarvis, and that this contradicted the DOT. Instead, the record is silent. Under those circumstances, the failure of Jarvis's counsel to raise the issue or object at the hearing precludes him from raising on appeal. See Aho v. Comm'r of Soc. Sec. Admin., No. CIV.A. 10-40052-FDS, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011) (collecting cases). The court therefore cannot conclude, based on this undeveloped argument, that the ALJ erred in her treatment of the vocational expert's testimony.

---

[35] See Claimant's Mem. (doc. no. 8) at 15 (stating only generally that "[t]here exist obvious inconsistencies" and tautologically that unspecified "testimony/evidence is not consistent with the [DOT], this cannot possibly be found to be consistent with the DOT . . . .").

[36] Id. at 16.

Finally, Jarvis contends that the ALJ erred in posing hypotheticals based on the RFC determined earlier in her analysis, when -- as discussed supra -- Jarvis contends that this RFC was not based on substantial evidence and did not incorporate all of Jarvis's limitations.[37] Because the ALJ did not err in her RFC determination, see supra Parts III.A-B, she likewise did not err in crafting hypothetical questions to the vocational expert consistent with that RFC.

## III. Conclusion

For the reasons discussed herein, Jarvis's motion to reverse and remand the Acting Commissioner's decision[38] is DENIED and the Acting Commissioner's motion to affirm[39] is GRANTED. The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 17, 2018

cc: Christine Woodman Casa, Esq.
    Robert J. Rabuck, AUSA

---

[37] Claimant's Mem. (doc. no. 8) at 16-17.

[38] Document no. 8.

[39] Document no. 11.

13